IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CORNBREAD CBD, PBC, a public benefit corporation incorporated in the Commonwealth of Kentucky,<br><br>                Plaintiff,<br><br>   v.<br><br>ASHLEIGH ROBERTS, in her official capacity as Chairwoman of the Tennessee Alcoholic Beverage Commission;<br>TIM WIRGAU, in his official capacity as a member of the Tennessee Alcoholic Beverage Commission;<br>DAVID TOMITA, in his official capacity as a member of the Tennessee Alcoholic Beverage Commission;<br>RUSSELL THOMAS, in his official capacity as Executive Director of the Tennessee Alcoholic Beverage Commission,<br><br>                Defendants. | No. _____<br><br>**COMPLAINT** |

**INTRODUCTION**

1. Since 2019, Cornbread CBD, PBC (Cornbread Hemp), has provided legal and safe hemp-derived products to American consumers.

2. Inspired by Kentucky's long history of hemp cultivation and driven by a desire to provide high-quality products that improve people's lives, Cornbread Hemp answered Congress's call in the 2018 Farm Bill to help rebuild America's hemp industry. Since then, Cornbread Hemp has grown into a thriving business.

3. Despite the hard work of its founders and the loyalty of its customers—and with no evidence of consumer dissatisfaction or public health concerns—Tennessee now seeks to force this

burgeoning industry into an antiquated, anticompetitive, and irrational regulatory framework that was originally designed for the alcohol industry after Prohibition.

4. Specifically, Tennessee House Bill 1376 (HB 1376), which will take effect on January 1, 2026, creates a three-tier distribution system for hemp-derived products. This will require these products to be funneled from suppliers through in-state wholesalers and brick-and-mortar retail stores before reaching consumers in Tennessee.

5. While a three-tier distribution system for alcohol may receive a constitutional pass due to the Twenty-First Amendment, instituting such a system for hemp-derived products unconstitutionally discriminates against and unduly burdens interstate commerce.

6. Furthermore, the law will stifle Cornbread Hemp's truthful and protected speech by prohibiting it from making any health-related claims about its products regardless of their veracity or scientific support.

7. Cornbread Hemp has a considerable business presence within Tennessee, shipping its products directly to Tennessee consumers. It has brought this lawsuit to vindicate its constitutional right to sell its products to Tennesseans free from discriminatory, unduly burdensome, and protectionist restrictions on interstate commerce, as well as its First Amendment right to freedom of speech in marketing, labeling, and advertising its products.

## JURISDICTION AND VENUE

8. This action arises under the United States Constitution's Interstate Commerce Clause, First Amendment, and Fourteenth Amendment, and 42 U.S.C. § 1983. This Court has jurisdiction over these claims under 28 U.S.C. § 1331 (federal question), and § 1343(a)(3) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act. 28 U.S.C. § 2201.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), because Defendants reside in this district, and 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred and continue to occur in this district.

## PARTIES

10. Plaintiff Cornbread Hemp is a public benefit corporation incorporated in Kentucky, with its principal place of business in Louisville.

11. Defendants Ashleigh Roberts, Tim Wirgau, and David Tomita are the members of the Tennessee Alcoholic Beverage Commission (Commission). Effective January 1, 2026, the Commission will be empowered by HB 1376 to enforce new licensure provisions for hemp businesses, as well as to oversee production, distribution, and sale of hemp-derived products. Tenn. Code Ann. § 57-7-105(a).[1] Roberts, Wirgau, and Tomita are sued solely in their official capacities.

12. Defendant Russell Thomas is the Executive Director of the Commission. He is the chief administrative officer of the Commission, performing all administrative and enforcement duties and functions under Chapter 1 of Title 57 of the Tennessee Code as delegated by the Commission. Tenn. Code Ann. § 57-1-105(c). Thomas is sued solely in his official capacity.

## LEGAL BACKGROUND AND FACTUAL ALLEGATIONS

**The 2018 Farm Bill**

13. In 2018, Congress passed the Agriculture Improvement Act, colloquially called the 2018 Farm Bill. Pub. L. 115–334, 132 Stat. 4490 (2018). The purpose of the Bill was to encourage new agricultural markets for farmers, including farmers of hemp, and new markets for producers of hemp-derived products, which can include textiles, food products, and wellness supplements.

---

[1] All citations within this Complaint to sections of Chapter 7 of Title 57 of the Tennessee Code are to provisions as created by HB 1376, all of which are scheduled to take effect on January 1, 2026. HB 1376 § 13.

14. The Farm Bill aimed to legalize and legitimize hemp as an agricultural crop, distinguish it from marijuana, and create a national regulatory framework for hemp production that would open the door to a thriving hemp industry.

15. Title X, Subtitle G, of the Farm Bill, portions of which have been codified as 7 U.S.C. §§ 1639o through 1639s, legalized the production and interstate commerce of "hemp" and "hemp products." 7 U.S.C. § 1639p(f); Pub. L. 115–334, § 10114.

16. "Hemp" is defined in the Farm Bill as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o. Under this definition, hemp is no longer considered marijuana under the Controlled Substances Act.

17. The Farm Bill leaves room for state regulation of the *production* of hemp, 7 U.S.C. § 1639p(a)(1), 1639p(a)(3)(A), but expressly preempts state laws that prohibit the interstate shipment of lawfully produced hemp or hemp products. Pub. L. 115–334, § 10114(b).

**Cornbread Hemp**

18. Founded in 2019 after the Farm Bill's passage, Cornbread Hemp manufactures and sells hemp-derived products that conform to the delta-9 tetrahydrocannabinol limits imposed by the Farm Bill. 7 U.S.C. § 1639o(1). All of Cornbread Hemp's hemp products contain a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis, and none of its hemp products contain any other type of tetrahydrocannabinol.

19. Cornbread Hemp's founders entered the hemp-derived products industry to set higher standards, after witnessing that low-quality products and poor services were damaging the reputation of this emerging field.

20. To achieve this goal, Cornbread Hemp pioneered a "flower-only" production model, using only the flowers of the cannabis plant in the extraction process, which produces higher-quality products that deliver the most effective results for customers.

21. Cornbread Hemp's products are certified organic by the United States Department of Agriculture, and they are tested by independent third-party laboratories for purity and chemical profile, ensuring both quality and transparency.

22. Cornbread Hemp ships its products directly to consumers in multiple states, including across Tennessee.

23. Over the past twelve months, Cornbread Hemp saw almost $1 million in revenue from about 11,000 Tennessee buyers, comprising 3% of its total revenue.

24. Cornbread Hemp uses BlueCheck software to verify the identity and age of every purchaser of its products to ensure that no sales are made or shipments are sent to individuals under twenty-one years of age.

25. Cornbread Hemp markets its products using non-medical claims regarding these products' health-related benefits. Its website allows users to filter its products based on different benefits, including for sleep, relaxation, or stress relief.

26. For example, its page on sleep-related benefits states that Cornbread Hemp's products "work with your body's natural sleep cycle" and are "specifically formulated to help you fall asleep more easily and support longer sleep duration." CBD & THC Sleep Products, Cornbread Hemp, https://www.cornbreadhemp.com/collections/sleep (last visited Sep. 15, 2025).

27. Further, Cornbread Hemp markets its products by posting reviews from customers describing their experiences and perceived health-related benefits from using Cornbread Hemp's products.

28. Cornbread Hemp's website expressly states that its statements have not been evaluated by the Food and Drug Administration and that its products are not intended to diagnose, treat, cure, or prevent any disease.

**HB 1376**

29. On May 21, 2025, Tennessee Governor William Lee signed HB 1376, which creates a new regulatory scheme over the production, distribution, marketing, and sale of hemp-derived products.

30. HB 1376 asserts as its "public health and safety" purpose "ensuring proper age verification" for the purchase of "the products regulated in this chapter [that] may be intoxicating[.]" Tenn. Code Ann. § 57-7-101.

31. HB 1376 defines "hemp-derived cannabinoid" to include "[a] hemp-derived product containing delta-9 tetrahydrocannabinol in a concentration of not more than three-tenths of one percent (0.3%) or less on a dry weight basis." Tenn. Code Ann. § 57-7-102(3)(A)(ii).

32. This definition mirrors the definition from the Farm Bill. 7 U.S.C. § 1639o.

33. HB 1376 also contains two other definitions of "hemp-derived cannabinoid" that are based on concentrations of cannabinoids other than delta-9 tetrahydrocannabinol. Tenn. Code Ann. § 57-7-102(3)(A)(i), (iii). Those definitions are irrelevant to this lawsuit because none of those other cannabinoids are present in Cornbread Hemp's products.

34. Cornbread Hemp's products conform to the federal definition of "hemp," and are therefore covered by Tennessee's definition of "hemp-derived cannabinoid" based on their concentration of delta-9 tetrahydrocannabinol.

35. HB 1376 defines "hemp-derived cannabinoid product" (HDCP) to include any

> product that contains or that is labeled as containing a hemp-derived cannabinoid and that is produced, marketed, or otherwise intended to be ingested orally, inhaled, or absorbed through the skin, including hemp and hemp plant parts, and any product

that may contain a hemp-derived cannabinoid that is extracted from hemp plants or hemp plant parts.

Tenn. Code Ann. § 57-7-102(4)(A).

36. All of Cornbread Hemp's products are HDCPs under this newly enacted Tennessee law.

**HB 1376's Three-Tier Distribution System for Hemp-Derived Products**

37. HB 1376 erects a three-tier distribution system for hemp-derived products within Tennessee. Tenn. Code Ann. §§ 57-7-103, -105(a)(1), -106.

38. The three-tier system was created in the early Twentieth Century in the wake of the Twenty-First Amendment to regulate alcohol. And historically, it has been limited to the alcohol industry.

39. Under this system, production, distribution, and retail are segmented between "supplier" licenses, "wholesaler" licenses, and "retailer" licenses, respectively. Tenn. Code Ann. § 57-7-106(b) (suppliers and retailers); § 57-7-106(f) (wholesalers).

40. Although entities are allowed to hold more than one of these three license types, the business activities under each license must be "conducted . . . on a separately designated premises or area or in wholly separate facilities," Tenn. Code Ann. § 57-7-106(a), unless the licensee holds all three license types, or holds a supplier and retail license while being contracted with a wholesaler for the remittance of taxes. Tenn. Code Ann. § 57-7-104(b)(4).

41. A wholesale licensee's warehouse must be located within Tennessee. Tenn. Code § 57-7-106(f)(1)(E)(i).

42. A retail licensee's store also must be located within Tennessee. Tenn. Code Ann. § 57-7-106(b)(5) (requiring all retail sales to occur at a "retail location in a face-to-face transaction").

43. Suppliers are "strictly prohibited" from shipping hemp-derived products "directly to a retail licensee" or "directly to a consumer." Tenn. Code Ann. § 57-7-106(b)(4).

44. Retailers are "strictly prohibited" from "directly or indirectly" delivering hemp-derived products to consumers; rather, all sales to consumers must occur at a "retail location in a face-to-face transaction." Tenn. Code Ann. § 57-7-106(b)(5).

45. Since Cornbread Hemp is an out-of-state business, HB 1376's creation of a three-tier system, and prohibition of direct-to-consumer shipping, will force Cornbread Hemp to either funnel its products through in-state wholesalers and retailers, or to become an in-state business itself if it wants to continue selling to Tennessee customers.

**HB 1376's Prohibition of Health-Related Claims in the Marketing and Labeling of Hemp-Derived Products**

46. HB 1376 prohibits hemp-derived products from being "labeled or otherwise marketed to make any health-related claims, including, but not limited to, claims pertaining to diagnoses, cures, or mitigation or treatment of any human disease or other condition." Tenn. Code Ann. § 57-7-110(e).

47. This restriction will forbid Cornbread Hemp from making accurate statements about its products, and from sharing the positive experiences of its customers.

## CLAIMS FOR RELIEF

### First Cause of Action

**Tennessee's Three-Tier Distribution System for Hemp Products Violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution**

48. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 47.

49. Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law[.]" U.S. Const. amend. XIV, § 1.

50. An actual and substantial controversy exists between Plaintiff and Defendants. Plaintiff has the right to sell lawful hemp-derived products in a manner free from arbitrary and irrational restrictions on how its products are delivered to customers.

51. Plaintiff has the right to sell lawful hemp-derived products, and to deliver these products to Tennessee consumers, free from arbitrary or irrational government restrictions that serve no legitimate state interest.

52. Tennessee's three-tier distribution system serves only the illegitimate purpose of economic protectionism, erecting unnecessary brick-and-mortar wholesale and retail junctions in the distribution chain of lawful hemp products that can only be filled by in-state actors.

53. Tennessee's three-tier distribution system for hemp-derived products unlawfully favors in-state businesses by forcing out-of-state suppliers, such as Cornbread Hemp, to funnel their products through in-state wholesalers and retailers.

54. Tennessee's three-tier distribution system for hemp-derived products unlawfully favors in-state retailers by forcing out-of-state retailers, such as Cornbread Hemp, to either establish a physical in-state presence or withdraw its products from the Tennessee market.

55. While a three-tier distribution system may be uniquely authorized by the Twenty-First Amendment to the United States Constitution, this constitutional carve-out applies exclusively to alcoholic beverages. In the context of hemp-derived products, such a system bears no rational relationship to protecting public health and safety.

56. Plaintiff has no adequate remedy at law to compensate for being subjected to Defendants' arbitrary, irrational, and protectionist scheme, and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of Tennessee's impending three-tier distribution system for hemp-derived products.

57. Plaintiff is therefore entitled to declaratory and injunctive relief against enforcement of Tennessee's impending three-tier distribution system for hemp-derived products.

## Second Cause of Action

**Tennessee's 3-Tier Distribution System, and Its Bans of Direct-To-Retail and Direct-To-Consumer Shipping, Violate the Commerce Clause of the United States Constitution**

58. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 57.

59. Under the Interstate Commerce Clause of the United States Constitution, states cannot discriminate against or unduly burden interstate commerce without Congressional authorization. U.S. Const. art. I, § 8, cl. 3.

60. An actual and substantial controversy exists between Plaintiff and Defendants. Plaintiff has the right to sell lawful hemp-derived products through interstate commerce free from state laws that discriminate against or unduly burden interstate commerce.

61. Congress has granted no authority, through the Farm Bill or otherwise, for states to adopt laws that discriminate against or unduly burden interstate commerce in hemp-derived products. In fact, Congress signaled its intent for this interstate market to be unimpeded when it legalized the interstate market and expressly preempted state laws that "prohibit the transportation or shipment of hemp or hemp products . . . through the State." Pub. L. 115–334, § 10114(b).

62. There is no constitutional provision akin to the Twenty-First Amendment that can exempt Tennessee's three-tier system for hemp-derived products from the Interstate Commerce Clause's prohibition of state laws that discriminate against or unduly burden interstate commerce.

63. Under Tennessee's three-tier system, in-state retail businesses are the only businesses that may sell directly to consumers. Out-of-state businesses must funnel their products through an in-state middleman or establish a physical presence in the state themselves.

64. Under Tennessee's three-tier system, in-state suppliers are allowed to merge production and retail facilities at a single location. In-state suppliers with a retail license can thereby produce hemp-derived products and sell them directly to consumers, bypassing the wholesale tier. Out-of-state suppliers, on the other hand, must go through the wholesale tier, or they must establish production facilities in-state if they are to compete with in-state suppliers on equal terms.

65. Tennessee's three-tier system will oust Cornbread Hemp and its products from the Tennessee market unless it does business with in-state wholesalers and retailers, or unless it establishes a physical presence within Tennessee. Specifically, Tennessee's three-tier system will force Cornbread Hemp to either (1) needlessly funnel its products through in-state middlemen, (2) bear the costs of becoming an in-state business by establishing physical production facilities, warehouses, and/or retail stores within Tennessee, or (3) cease selling its products to Tennesseans, forcing Tennessee consumers to turn solely to in-state retailers in order to purchase hemp-derived products. Thus, Tennessee's three-tier system is on its face and in effect discriminatory against interstate commerce. Further, Tennessee's three-tier system's substantial burdens on interstate commerce are clearly excessive in relation to any putative local benefits.

66. Any non-discriminatory purpose, such as customer age verification, could be achieved through non-discriminatory regulation.

67. Indeed, Tennessee law permits the direct-to-consumer shipping of wine, Tenn. Code Ann. § 57-3-217, demonstrating that age verification does not justify a total ban on direct-to-consumer shipping of hemp-derived products, which pose less risk to consumer and public health than alcoholic beverages.

68. Plaintiff has no adequate remedy at law to compensate for being subjected to Tennessee's discriminatory and unduly burdensome scheme, and will suffer irreparable injury absent an injunction prohibiting Defendants' enforcement of Tennessee's three-tier system.

69. Plaintiff is therefore entitled to declaratory and injunctive relief against enforcement of Tennessee's three-tier system.

### Third Cause of Action

### Tenn. Code Ann. § 57-7-110(e) Violates the First Amendment to the United States Constitution

70. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 69.

71. An actual and substantial controversy exists between Plaintiff and Defendants. The First Amendment to the United States Constitution, incorporated against the states by the Fourteenth Amendment, prohibits the government from "abridging the freedom of speech[.]" U.S. Const. amend. I. Plaintiff has the right to market and label legal hemp-derived products in a manner free from excessive government restrictions.

72. A statute that regulates speech based on its content is unconstitutional unless it advances a compelling government interest and is narrowly tailored to promote that interest. Because Tenn. Code Ann. § 57-7-110(e) categorically forbids Plaintiff from making any "health-

related" claims about its legal hemp-derived products—regardless of their accuracy or scientific support—it is not narrowly tailored to advance a compelling government interest.

73. Even if Cornbread Hemp's marketing and labeling is classified as commercial speech, such speech is constitutionally protected if it concerns a lawful activity and is not misleading. Protected commercial speech includes health-related claims about products that are accurate, or that are backed by some credible evidence. A state cannot restrict such speech unless the restriction directly advances a substantial government interest and is not more extensive than necessary.

74. It is protected speech for a business to market its products by promoting customer reviews that accurately reflect the customers' own perceptions of a product's health-related benefits.

75. The customer reviews Cornbread Hemp utilizes in the marketing of its products accurately reflect the customers' own perceptions of a product's health-related benefits.

76. There is credible scientific evidence that links hemp-derived products, such as Cornbread Hemp's products, to positive health benefits.

77. The health-related claims Cornbread Hemp makes in the marketing and labeling of its products are accurate, or are at least supported by some credible scientific evidence.

78. Tennessee has no compelling or substantial interest in preventing Cornbread Hemp from promoting customer reviews or making accurate health-related claims about its products.

79. Even if Tennessee has a compelling or a substantial interest, Tenn. Code Ann. § 57-7-110(e) is a more extensive restriction of protected speech than necessary to protect public health and safety.

80. Tenn. Code Ann. § 57-7-110(e) bans *any* "health-related" claims in the marketing and labeling of hemp-derived products regardless of the nature of such claims, the scientific evidence in support of the claims, or the presence of disclaimers.

81. Tenn. Code Ann. § 57-7-110(e) is a far more extensive restriction of protected speech than necessary to protect the public health or safety. Tennessee has eschewed less extensive restrictions of protected speech in favor of a total ban, without exception, of customer reviews and health-related claims that are accurate or supported by credible evidence.

82. Plaintiff has no adequate remedy at law to compensate for being subjected to Defendants' over-extensive restriction of protected speech and will suffer irreparable injury absent an injunction prohibiting Defendants' enforcement of Tenn. Code Ann. § 57-7-110(e).

83. Plaintiff is therefore entitled to declaratory and injunctive relief against enforcement of Tenn. Code Ann. § 57-7-110(e).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief.

1. A declaration that Tennessee's three-tier system for hemp-derived products violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

2. A declaration that Tennessee's three-tier system for hemp-derived products violates the Commerce Clause of Article I, Section 8, of the United States Constitution;

3. A declaration that Tenn. Code Ann. § 57-7-110(e) violates the First Amendment to the United States Constitution;

4. Injunctive relief forbidding Defendants and Defendants' agents from enforcing, or attempting to enforce, Tennessee's three-tier system for hemp-derived products;

5. Injunctive relief forbidding Defendants and Defendants' agents from enforcing, or attempting to enforce, Tenn. Code Ann. § 57-7-110(e);

6. An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

7. Such other relief as the Court deems just, necessary, or proper.

DATED: September 17, 2025.

Respectfully submitted,

David J. Hoffa, Ariz. Bar No. 038052*
PACIFIC LEGAL FOUNDATION
3241 E. Shea Blvd., Suite 108
Phoenix, AZ 85028
Telephone: (916) 419-7111
DHoffa@pacificlegal.org

/s/ Michael A. Johnson
Michael A. Johnson, Tenn. Bar No. 030210
JOHNSON, EVANS, & HEADRICK, P.C.
222 Second Ave. South, Suite 1250
Nashville, TN 37201
Telephone: (615) 747-7704
MJohnson@je.legal

Chris Barnewolt, D.C. Bar No. 90020413*
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
CBarnewolt@pacificlegal.org

*Pro Hac Vice Applications Forthcoming*

Anastasia Boden, Cal. Bar No. 281911*
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
ABoden@pacificlegal.org

*Attorneys for Plaintiff*