IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CORNBREAD CBD, PBC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-01056 |
| | ) | |
| ASHLEIGH ROBERTS, et al. | ) | Judge Aleta A. Trauger |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL DISMISSAL**

1

# INTRODUCTION

In 2018, the federal government legalized hemp. This resulted in a national market for recreational and therapeutic hemp-derived products. Yet this market can be abused, leading to the sale of tainted drugs or even illegal sales to minors. Because of its concerns about public health and safety in the hemp market, Tennessee enacted 2025 Tenn. Pub. Acts, ch. 526 (the "Hemp-Derived Cannabinoids Act" or "HDC Act"), which creates a three-tier system for regulating the sale and distribution of hemp-based products. Plaintiff, Cornbread CBD, PBC ("Cornbread"), a Kentucky corporation that derives its income solely from hemp products, sued to strike down these protections. Cornbread claims, *inter alia*, that the three-tier system violates the Due Process Clause, and that the Act's prohibition on direct-to-consumer shipping of hemp-based products violates the Commerce Clause.

Federal pleading rules require dismissal when a plaintiff "can[not] construct a claim from the events [alleged] in the complaint." *16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (citation omitted). That is the case here with respect to these two claims, and they should therefore be dismissed. The due-process claim fails because the HDC Act's three-tier system is rationally related to its stated public-health interests. And the Dormant Commerce Clause challenge to the direct-to-consumer shipping ban fails because the ban does not discriminate against out-of-state businesses like Cornbread and furthers the legitimate state interest of public health without excessive restriction.

# BACKGROUND

A.  **2018 Farm Bill**

In 2018, Congress passed the Agriculture Improvement Act, colloquially known as the 2018 Farm Bill, Pub. L. 115-334, 132 Stat. 4490 (2018), which regulated the hemp market. Dkt.

1, ¶ 13. The Farm Bill legalized both the production and interstate commerce of "hemp" and "hemp products." 7 U.S.C. § 1639p(f); Dkt. 1 ¶ 15. The Farm Bill defines hemp as "the plant Cannabis sativa L. and any part of that plant. . . with a delta-9 tetrahydrocannabinol concentration *of not more than 0.3 percent on a dry weight basis*." 7 U.S.C. § 1639o (emphasis added); Dkt. 1 ¶ 16. Thus, hemp is distinct from the Schedule 1 drug defined as marijuana under the Controlled Substances Act. 21 U.S.C.A. §§ 802(16)(B)(i), 812(c)(10); Dkt. 1 ¶ 16.

### B. Tennessee's HDC Act

On May 21, 2025, Governor William Lee signed the HDC Act, 2025 Tenn. Pub. Acts, ch. 526, which is primarily codified at Tenn. Code Ann. §§ 57-7-101 to -117. The HDC Act takes effect on January 1, 2026, and creates a new regulatory framework for the sale and distribution of hemp-derived cannabinoid products. The Act serves "public health and safety" by "ensuring proper age verification" and ensuring the "state's ability to efficiently enforce" crucial testing requirements and sales limitations. Tenn. Code Ann. § 57-7-101.

Under the HDC Act, a "hemp-derived cannabinoid" is "[a] hemp-derived product containing delta-9 tetrahydrocannabinol in a concentration of not more than three-tenths of one percent (0.3%) or less on a dry weight basis." Tenn. Code Ann. § 57-7-102(3)(A)(ii). This definition matches the definition of hemp in the 2018 Farm Bill. 7 U.S.C. § 1639o. The Act regulates the production, distribution, and sale of "hemp-derived cannabinoid product[s]," which includes any "product that contains or that is labeled as containing a hemp-derived cannabinoid and that is . . . intended to be ingested orally, inhaled, or absorbed through the skin. . ." Tenn. Code Ann. § 57-7-102(4)(A); Dkt. 1 ¶ 35.

The HDC Act also contains a three-tier distribution system for hemp products in Tennessee. *See* Tenn. Code Ann. §§ 57-7-103, -105(a)(1), -106. Production, distribution, and

retail are divided between "supplier" licenses, "wholesaler" licenses, and "retailer" licenses. *See* Tenn. Code Ann. § 57-7-106(b) (suppliers and retailers); § 57-7-106(f) (wholesalers); Dkt. 1 ¶ 39.

A retail licensee's store must be in Tennessee, and all sales must occur at a "licensed retail location in a face-to-face transaction." Tenn. Code Ann. § 57-7-106(b)(5); Dkt. 1 ¶ 42. A wholesaler's warehouse must also be located in Tennessee. Tenn. Code § 57-7-106(f)(1)(E)(i). Suppliers of hemp-derived products are "strictly prohibited" from shipping such products "directly to a retail licensee" or "directly to a consumer." Tenn. Code Ann. § 57-7-106(b)(4); Dkt. 1 ¶ 43; *see* Tenn. Code Ann. § 57-7-106(b)(5) ("The delivery of HDCPs to consumers, directly or indirectly, is strictly prohibited.").

### C. Federal Law Effective November 12, 2026.

On November 12, 2025—a month after Cornbread filed its Complaint in this case—President Trump signed legislation that bans most consumable hemp-derived THC products nationwide, effective November 12, 2026. 2025 Pub. L. No. 119-37, § 781, 139 Stat 49 ("Federal Extensions Act"). The Federal Extensions Act redefines "hemp" and limits the amount of total tetrahydrocannabinols" (THC) in final hemp-derived products to "0.4 milligrams" "per container." *Id.* (to be codified at 7 U.S.C. § 1639o(1)(C)(iv)(III)). During the Senate floor vote on this new law, Senator Rand Paul stated that this new definition of hemp is so restrictive that it "amounts to an effective ban because the limit is so low that the products intended to manage pain or anxiety will lose their effect." *Senate Floor*, at 3:34:11-23 (YouTube, Nov. 10, 2025), https://www.youtube.com/watch?v=NiqT29TTxfI. Thus, the law will "shut down the hemp industry across the United States" by "eliminat[ing] 100% of the hemp products in our country."

4

*Id.* at 3:32:01-08, 3:34:05-14.[1]

### D. Parties and Posture

Cornbread "manufactures and sells hemp-derived products *that conform to the delta-9 tetrahydrocannabinol limits imposed by the [2018] Farm Bill*," Dkt. 1, ¶¶ 10, 18 (emphasis added). "All of Cornbread Hemp's hemp products contain a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis, and none of its hemp products contain any other type of tetrahydrocannabinol." *Id.* at ¶ 18. Thus, its "products are covered by Tennessee's definition of 'hemp-derived cannabinoid' based on this concentration." *Id.* at ¶ 34. "Cornbread Hemp ships its products directly to consumers in multiple states, including across Tennessee." *Id.* at ¶ 22.

Defendants Ashleigh Roberts, Tim Wirgau, and David Tomita are members of the Tennessee Alcoholic Beverage Commission ("ABC"). *Id.* at ¶ 11. As of January 1, 2026, the HDC Act will authorize the ABC to "enforce new licensure provisions for hemp businesses, as well as to oversee production, distribution, and sale of hemp-derived products. Tenn. Code Ann. § 57-7-105(a)." *Id.* Defendant Russell Thomas is the current Executive Director and Chief Administrative Officer of the ABC. He performs all enforcement duties delegated by the ABC under the HDC Act. Tenn. Code Ann. § 57-1-105(c); Dkt. 1 ¶ 12.

Cornbread challenges the constitutionality of the HDC Act and alleges three causes of action against the ABC:

In Count 1, Cornbread claims that the three-tier system violates the Due Process Clause of

---

[1] This area of law also remains in flux in general as recent reports show that the Trump Administration may reclassify cannabis as a Schedule III drug. *See White House Says President Trump Has Made 'No Final Decisions' Around Marijuana Rescheduling*, FORBES (Dec. 11, 2025), available at: https://perma.cc/N2AL-5AMW.

the Fourteenth Amendment. *Id.* at ¶¶ 48-57. Cornbread alleges that the system's restrictions are "arbitrary and irrational" and "serve no legitimate state interest." *Id.* at ¶¶ 50, 51.[2]

In Count 2, Cornbread claims that Tennessee's three-tier distribution system and the direct-to-consumer shipping ban violate the Commerce Clause. *Id.* at ¶¶ 58-69. Cornbread alleges, in pertinent part, that § 57-7-106(b) of the Act "discriminate[s] against or unduly burden[s] interstate commerce" because "in-state retail businesses are the only businesses that may sell directly to consumers," *id.* at ¶ 63, and "age verification does not justify a total ban on direct-to-consumer shipping of hemp-derived products," *id.* at ¶ 67. *See id.* at ¶¶ 42-44.

In Count 3, Cornbread claims that Tenn. Code Ann. § 57-7-110(e) of the Act violates the First Amendment, alleging that it "categorically forbids Plaintiff from making any 'health-related' claims about its legal hemp-derived products—regardless of their accuracy or scientific support." *Id.* at ¶¶ 70-83.

For the reasons below, Plaintiffs fail to state a claim that the HDC Act violates the Due Process Clause (Count 1) or that the Act's direct-to-consumer shipping ban violates the Dormant Commerce Clause (Count 2 in part).

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must "allege [ ] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Wesley v. Campbell*, 779 F.3d 421, 427–28 (6th Cir.

---

[2] Cornbread also alleges that the three-tier system "serves only the illegitimate purpose of economic protectionism" and "unlawfully favors in-state business." *Id.* at ¶¶ 52, 53. But such allegations merely repackage Cornbread's Commerce Clause claim as a due-process claim. *See id.* at ¶¶ 60-65. And when "a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Davis v. Gallagher*, 951 F.3d 743, 752 (6th Cir. 2020) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

6

2015) (citing *Handy–Clay v. City of Memphis, Tenn.,* 695 F.3d 531, 538 (6th Cir. 2012)) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)). "A district court must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Id.* at 428 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). But Plaintiffs must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## ARGUMENT

The Complaint should be partially dismissed for two reasons. First, the HDC Act comports with Due Process under the Fourteenth Amendment because it does not implicate a fundamental right and the Act's three-tier system satisfies rational-basis review by protecting public health. Second, the Act's direct-to-consumer shipping ban comports with the Commerce Clause because it does not discriminate against interstate commerce and is not excessive.

### I. The Due Process Challenge Fails to State a Claim (Count 1).

The HDC Act is constitutional under the Due Process Clause; Cornbread's allegations to the contrary fail to state a claim on which relief can be granted.

Substantive due process protects people from the "exercise of [governmental] power without any reasonable justification." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Cornbread does not allege that the HDC Act infringes a fundamental right—and properly so, as "there is no fundamental right to pursue a career or run a business." *ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 745 (M.D. Tenn. 2021) (collecting cases). Hence, only rational-basis review applies. *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 689 (6th Cir. 2011) (quoting *United States v. Comstock*, 130 S.Ct. 1949, 1966 (2010) (Kennedy, J., concurring)).

Under rational-basis scrutiny, the HDC Act is presumptively valid and Cornbread must

show there is "no rational connection" to a "legitimate government interest." *Id.* (cleaned up, citation omitted). Those seeking to "invalidate a statute using rational basis review must negative *every conceivable basis* that might support it." *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) (citation omitted) (emphasis added). Further, the rational-basis test for economic regulations is "highly deferential." *Am. Exp. Travel Related Servs.,* 641 F.3d at 689 (quoting *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007)). "[C]ourts hold statutes unconstitutional under this standard of review *only in rare or exceptional circumstances*." *Id.* (cleaned up, citation omitted) (emphasis added). "[T]he Supreme Court has not invalidated an economic statute on substantive due process grounds since . . . 1935." *Id.* (cleaned up, citation omitted).

The HDC Act is entitled to that high deference because it constitutes an economic regulation—it concerns "ordinary commercial transactions" involving hemp. *Id*. It also "adjust[s] the burdens and benefits of economic life" under the three-tier system structure. *In re Blue Diamond Coal Co.*, 79 F.3d 516, 521 (6th Cir. 1996).

The HDC Act's regulation of hemp-derived products serves a legitimate state interest: protecting the public health and safety. *See Norris v. Stanley*, 73 F.4th 431, 436-37 (6th Cir. 2023); *Neinast v. Board of Trustees of Columbus Metro. Library*, 346 F.3d 585, 592 (6th Cir. 2003). The Act furthers these interests in many ways, including:

- Protecting minors from using controlled substances, Tenn. Code Ann. § 57-7-101; *Sarasota Wine Mkt., LLC v. Schmitt*, 987 F.3d 1171, 1180 (8th Cir. 2021);

- Quality control, Tenn. Code Ann. §§ 57-7-101, 57-7-105(a)(2), 57-7-107; *Parrino v. Price*, 869 F.3d 392, 398-99 (6th Cir. 2017);

- Preventing diversion to illegal markets, Tenn. Code Ann. §§ 57-7-101, 57-7-105(a)(2), 57-7-106(b)(2); *Volkman v. U.S. Drug Enf't Admin*., 567 F.3d 215, 221-22 (6th Cir. 2009); and

- Reduction in crime, Tenn. Code Ann. §§ 57-7-101, 57-7-106(b)(2); *Johnson v. City of Cincinnati*, 310 F.3d 484, 504-05 (6th Cir. 2002)

And the Act's regulation of hemp-based products via a three-tier licensing and distribution system is rationally connected to the State's legitimate interests. States have traditionally exercised broad police powers "to protect the health and safety of their citizens" and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Neinast*, 346 F.3d at 593 (quotations and citations omitted). Indeed, in the context of alcohol regulation, the Sixth Circuit has recognized that three-tier systems further "plenty of legitimate state interests," such as "promoting temperance and controlling the distribution" of alcohol. *Lebamoff Enters. Inc. v. Whitmer*, 956 F.3d 863, 871 (6th Cir. 2020).

Here, in the context of hemp regulation, the Act's three-tier system similarly controls distribution of a potentially dangerous substance and prevents entities from undercutting prices and escaping the State's interest in managing consumption. *See id*. Indeed, by *simultaneously* prohibiting direct shipment to consumers, streamlining examination of wholesale facilities by requiring in-state locations, and controlling the location of where hemp products are purchased, the Act furthers these same public health protections. Importantly, on-site inspections "protect consumers from fraudulent and prohibited sales of products." *Jean-Paul Weg LLC v. Dir. of New Jersey Div. of Alcoholic Beverage Control*, 133 F.4th 227, 238 (3d Cir. 2025) and help "maintain oversight" over hemp products sold. *Day v. Henry*, 152 F.4th 961, 974 (9th Cir. 2025). Such inspections may occur under Tenn. Code Ann. § 57-7-105(a)(2) and (a)(4). In short, the three-tier system monitors the quality of hemp products that consumers purchase, and ensures that minors do not purchase illegal products intentionally or inadvertently.

II. **The Dormant Commerce Clause Challenge to the Direct-to-Consumer Shipping Ban Fails to State a Claim (Count 2 in part).**

The HDC Act's direct-to-consumer shipping ban is constitutional under the Dormant

9

Commerce Clause; Cornbread's allegations to the contrary also fail to state a claim on which relief can be granted.

The Sixth Circuit uses a "two-step" approach for Dormant Commerce Clause claims. *Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 369 (6th Cir. 2013). First, it asks if a state statute "directly regulates or discriminates against interstate commerce." *Id.* at 370 (citing *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010)). Second, if the statute is not discriminatory, the court applies a balancing test, known as *Pike* balancing, to assess if the burden the statute imposes on interstate commerce is clearly excessive in relation to the putative local benefits. *Id.* at 370. Because the direct-to-consumer shipping ban does not discriminate against interstate commerce, and the burden the ban imposes on such commerce is not excessive in relation to its public-health benefits, it is constitutional.

The direct-to-consumer shipping ban does not discriminate against interstate commerce because it applies equally to in-state and out-of-state businesses. Under § 57-7-106(b) of the HDC Act, "[t]he shipping" of hemp-derived products directly to a consumer in Tennessee is prohibited. Tenn. Code Ann. § 57-7-106(b)(4); *see also id.* § 57-7-106(b)(5) prohibiting "[t]he delivery" of hemp-derived products to consumers, directly or indirectly. Instead, "[a]ll sales" to consumers must take place at a "retail location in a face-to-face transaction." Tenn. Code Ann. § 57-7-106(b)(5). The Act makes no "reference to in-state or out-state origins" for shippers of hemp-based products. *Snyder*, 735 F.3d at 373. Just as a supplier in Kentucky, for example, would be prohibited from directly shipping hemp-based products to a consumer in Knoxville, Tennessee, so too would a supplier in Memphis, Tennessee, be prohibited from directly shipping hemp-based products to a consumer in Knoxville.

Cornbread suggests that the direct-to-consumer shipping ban discriminates against

interstate commerce because "in-state retail businesses are the only businesses that may sell directly to consumers." Dkt 1., ¶ 63. But that suggestion misses the mark because a statute discriminates under the Dormant Commerce Clause only when it treats out-of-state entities differently from "similarly situated" in-state entities. *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 216 (2d Cir. 2003) (quoting *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 500 (5th Cir. 2001)). For Commerce Clause purposes, therefore, Cornbread's in-state equivalent would be a Tennessee supplier—not a retailer. *See id.* at 213. And the in-person sales requirement applies equally to in-state and out-of-state suppliers. Tenn. Code Ann. § 57-7-106(b)(5). So this requirement is not protectionist. *See Brown*, 320 F.3d 200 at 210.

Federal precedent supports this conclusion. In *Snyder*, the Sixth Circuit held that a Michigan provision did not favor in-state beverage manufacturers and distributors over out-of-state where the "unique-mark provision requires *all those* who sell certain amounts of beverages in Michigan to use the same unique-to-Michigan mark." 735 F.3d at 373 (emphasis added). And in *Brown*, the Second Circuit noted that a statute "does not on its face prefer either a particular in-state direct shipper of cigarettes or in-state direct shippers generally" because the statute prohibited *all* cigarette sellers and common and contract carriers from shipping and transporting cigarettes directly to New York consumers. 320 F.3d at 210.

Because the direct-to-consumer shipping ban is not discriminatory, *Pike* balancing applies. *Snyder*, 735 F.3d at 373; *see Just Puppies, Inc. v. Frosh*, 565 F. Supp. 3d 665, 717 (D. Md. 2021) (stating that *Pike* balancing is not "immune from judicial scrutiny at the motion to dismiss stage"), *aff'd sub nom.*, 123 F.4th 652 (4th Cir. 2024). And the direct-to-consumer shipping ban passes muster under *Pike* balancing. While prohibiting direct-to-consumer shipping imposes a burden on out-of-state suppliers of hemp-based products, that burden is not clearly excessive in relation to

the corresponding public-health and -safety benefits—many of the same public-health and -safety benefits discussed above in the context of Cornbread's due-process claim. Indeed, in *Int'l Dairy Foods Ass'n v. Boggs*, the Sixth Circuit suggested that the two tests are functionally similar by stating: "[b]ecause there is a *rational basis* to believe that the Rule's benefit outweighs any burden that it imposes, the Rule is constitutional under *Pike*." 622 F.3d 628, 650 (6th Cir. 2010) (emphasis added). And other courts have stated more explicitly that *Pike* balancing is "analogous to rational basis review." *Just Puppies*, 565 F. Supp. 3d at 724. Ultimately, both tests are deferential. *Id.* at 717.

The direct-to-consumer shipping ban furthers Tennessee's legitimate interest in public health by "reduc[ing] minors' access" to hemp products. *See Brown*, 320 F.3d at 217. By requiring purchases to be in-person, there is no potential for individuals to circumvent the age-verification software that Cornbread alleges it uses. Compl. Dkt. 1 ¶ 24. Instead, *every* customer's age will be viewed in person before a hemp purchase takes place.

## CONCLUSION

The Court should grant the Defendants' Motion to Dismiss in Part and dismiss Count 1 of the Complaint (Cornbread's due-process claim), as well as the Commerce Clause challenge to the direct-to-consumer shipping ban in Count 2 of the Complaint.

    Respectfully submitted,

    JONATHAN SKRMETTI
    Attorney General and Reporter

    s/ Gary Dunn
    GARY R. DUNN
    Acting Assistant Attorney General
    New York Registration No. 5676317
    Constitutional Defense Division

MIRANDA JONES
B.P.R. No 036070
Senior Assistant Attorney General
Constitutional Defense Division

Office of the Tennessee
Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 532-7400
Gary.Dunn@ag.tn.gov
Miranda.Jones@ag.tn.gov

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2025, the undersigned filed the foregoing document using the Court's Electronic Court-Filing system, which sent notice of filing to the following counsel of record:

| COUNSEL OF RECORD | PARTY REPRESENTED |
|---|---|
| Anastasia Boden<br>PACIFIC LEGAL FOUNDATION<br>555 Capitol Mall<br>Suite 1290<br>Sacramento, CA 95814<br>(916) 419-7111<br>Email: ABoden@pacificlegal.org<br><br>Chris Barnewolt<br>PACIFIC LEGAL FOUNDATION<br>3100 Clarendon Blvd.<br>Suite 1000<br>Arlington, VA 22201<br>(202) 888-6881<br>Email: CBarnewolt@pacificlegal.org<br><br>David J. Hoffa<br>3718 E. Glenrosa Ave.<br>Ste Apt. 2<br>Phoenix, AZ 85018<br>989-627-7757<br>Email: DHoffa@pacificlegal.org<br><br>Michael A. Johnson<br>Johnson Evans & Headrick, P.C.<br>222 Second Ave. South<br>Suite 1250<br>Nashville, TN 37201<br>615-747-7701<br>Email: mjohnson@je.legal | Counsel for Plaintiff |

Respectfully submitted,

s/ Gary R. Dunn
GARY R. DUNN

14